# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENISE M. ONDERKO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> LM GENERAL INSURANCE COMPANY, <br><br> Defendant. | CIVIL ACTION NO. 3:19-CV-02225 <br><br> (MEHALCHICK, M.J.) |

## MEMORANDUM

Before the Court is a Motion to Compel Arbitration ("the Motion") filed by Plaintiffs Denise M. Onderko and Joseph J. Onderko (hereinafter, collectively known as "Plaintiffs") on January 12, 2021. (Doc. 32). This matter has been fully briefed and is ripe for disposition. (Doc. 32; Doc. 34; Doc. 37; Doc. 38). For the following reasons, the Court will **DENY** Plaintiffs' motion.

### I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs filed their initial Complaint on November 21, 2019, in the Court of Common Pleas for Luzerne County against Defendant LM General Insurance Company (hereinafter known as "Defendant"). (Doc. 2-1, at 1). On December 30, 2019, Defendant removed the action to the United States District Court for the Middle District of Pennsylvania. (Doc. 1). Plaintiffs filed the instant motion on January 12, 2021. (Doc. 32).

In their Complaint, Plaintiffs bring a claim for breach of contract regarding an Underinsured Motorists ("UIM") claim under the insurance policy agreed upon by Plaintiffs

and Defendant.[1] (Doc. 2-1, at 17). Plaintiffs' Complaint stems from a vehicular accident that occurred on February 23, 2017, where another driver struck Plaintiff Denise Onderko's vehicle and caused a violent collision. (Doc. 2-1, at 7). Plaintiffs allege that the other driver "had a stop sign[,] . . . failed to yield the right of way to Plaintiff, Denise M. Onderko[,] . . . and obstructed the lawful path of travel of Plaintiff, Denies M. Onderko." (Doc. 2-1, at 7). Plaintiffs state that Plaintiff Denise Onderko suffers from "severe, permanent, painful, and disabling injuries" as well as a loss of earnings and enjoyments. (Doc. 2-1, at 9, 11). Plaintiffs argue that the other driver "has been insufficient to compensate Plaintiffs . . . [and] was operating an underinsured motor vehicle." (Doc. 2-1, at 12). At the time of the collision, Plaintiffs state that they "were named insureds under an automobile Policy issued by Defendant" pertaining, in part, to underinsured motorist coverage. (Doc. 2-1, at 12). Plaintiffs assert that Defendant valued Plaintiffs' liability claims as falling "within the tortfeasors' liability limit of $250,000" and that Defendant has not provided any underinsured motorists benefits under Plaintiffs' policy. (Doc. 2-1, at 16). Plaintiffs contend that Defendant failed to adequately evaluate Plaintiffs' UIM claim, failed to offer reasonable payment for the claim, and failed to adequately investigate the claim in violation of its "fiduciary, contractual, and statutory" duty resulting in a breach of the agreed upon policy. (Doc. 2-1, at 17-18). Plaintiffs seek "an amount in excess of that requiring compulsory arbitration under the applicable

---

[1] In their original Complaint, Plaintiffs also brought a claim for statutory and common law bad faith. (Doc. 2-1, at 18). However, in a joint stipulation filed on February 19, 2020, Plaintiffs agreed to withdraw, without prejudice, their claim for statutory and common law bad faith and Defendant agreed "to waive any statute of limitations defense . . . as it pertains to Plaintiffs' bad faith claims." (Doc. 15, at 1). The Court approved the stipulation on February 21, 2020. (Doc. 17).

statutes of the Commonwealth of Pennsylvania and the local rules of Court, plus interest, costs of suit, and attorneys' fees." (Doc. 2-1, at 17-18).

Plaintiffs further contend that the agreed-upon insurance contract between the parties includes an arbitration clause, requiring the parties to participate in arbitration of their claims before pursuing suit in court if either party makes a demand to arbitrate. (Doc. 32, at 6-7). Defendant avers that an Endorsement to the policy circumvents the insurance contract and does not require mandatory arbitration if demanded. (Doc. 37, at 9).

## II. DISCUSSION

### A. LEGAL STANDARD

"Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be express, unequivocal agreement to that effect." *Guidotti v. Legal Helpers Debt Resol., L.L.C.,* 716 F.3d 764, 773 (3d Cir. 2013) (internal quotations omitted). The Third Circuit in *Guidotti* held that where the affirmative defense of arbitrability is apparent on the face of the complaint or those documents relied upon in the complaint, the standard under Federal Rule of Civil Procedure 12(b)(6) should be applied.[2] *Guidotti,* 716 F.3d at 773-74. In those cases, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., would favor speedy resolution without the delay of discovery. *Guidotti,* 716 F.3d at 773-74. "[A] more deliberate pace is required" when either (1) the complaint and documents referenced therein do not establish with "requisite clarity" that the parties agreed to arbitrate or (2) "the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not

---

[2] The Supreme Court has defined arbitrability as "whether [the] arbitration agreement applies to the particular dispute." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S.Ct. 524, 527 (2019). The question of whether a valid arbitration agreement exists is a question for the court. *Henry Schein,* 139 S.Ct. at 529.

intend to be bound, even though on the face of the pleadings it appears that it did." *Guidotti*, 716 F.3d at 774 (internal quotations omitted).

When it is not apparent on the face of the complaint that the parties agreed to arbitrate the particular dispute, "the motion to compel arbitration must be denied pending further development of the factual record." *Guidotti*, 716 F.3d at 774. However, when the issue of arbitrability is apparent on the face of the complaint and incorporated documents but the non-moving party has come forward with evidence to place the question in issue, the motion should be resolved according to the standard provided in Federal Rule of Civil Procedure 56. *Guidotti*, 716 F.3d at 774. "Under either of those scenarios, a restricted inquiry into the factual issues will be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate, and the non-movant must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement." *Guidotti*, 716 F.3d at 774 (internal citations and quotations omitted).

B. ARBITRATION CLAUSE

To compel arbitration, a court must determine (1) the validity of the arbitration agreement and (2) whether the dispute is encompassed by the scope of that agreement. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). Accordingly, a court must initially inquire into whether a valid agreement to arbitrate exists. *Bey v. Citi Health Card*, Civ. Action No. 15-6533, 2017 WL 2880581, at *4–5 (E.D. Pa. July 6, 2017); *Trippe*, 401 F.3d at 532. Courts look to ordinary state law principles of contract formation to make this determination. *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 264 (3d Cir. 2003). Pennsylvania law applies to both the policy and the endorsements, and thus absent a choice of law clause, this Court will apply Pennsylvania law in its interpretation of the arbitration clause. (Doc. 2-

1, at 53, Doc. 2-1, at 57); *See Rea v. Cincinnati Ins. Co.,* Civ. Action No. 3:13-21, 2014 WL 4198059, at *2 (W.D. Pa. Aug. 22, 2014); *ABC Sewer Cleaning Co. v. Foxco, Inc.,* Civ. A. No. 90–1934, 1991 WL 158746, at *2 (E.D. Pa. Aug. 13, 1991); *United Gov't Sec. Officers of Am., Int'l Union v. Exelon Nuclear Sec., LLC,* Civ. Action No. 11–1928, 2014 WL 2476434, at *4–5 (E.D. Pa. June 3, 2014).

The Third Circuit has provided guidance as to how terms found within an insurance contract dispute should be interpreted under Pennsylvania law. *See Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 163–64 (3d Cir. 2011) (citations and quotation marks omitted); *see also Rea*, 2014 WL 4198059, at *2-*3, *Firemen's Ins. Co. of Washington, D.C. v. Wenventure, Inc.,* Civ. Action No. 3:10–cv–185, 2012 WL 1094807, at *4–5 (W.D. Pa. Mar. 30, 2012).

> The rules of analysis of insurance policies in Pennsylvania are well established. The goal of interpreting an insurance policy, like that of interpreting any other contract, is to determine the intent of the parties. It begins with the language of the policy. A policy must be read as a whole and its meaning construed according to its plain language.
>
> The burden of drafting with precision rests with the insurance company, the author of the policy. An ambiguity in contract language exists when the questionable term or language, viewed in the context of the entire policy, is reasonably susceptible of different constructions and capable of being understood in more than one sense. Where a term is ambiguous, it is to be construed against the insurer, in favor of the insured. The policy rationale underlying strict application of the doctrine is that because most insurance agreements are drafted by the insurance industry, they are essentially contracts of adhesion.
>
> Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language. Courts should not distort the meaning of the language or strain to find an ambiguity. A contract is not rendered ambiguous merely because the parties disagree about its construction.

*Meyer*, 648 F.3d at 163-64 (citations and quotation marks omitted); *see also Rea*, 2014 WL 4198059, at *2-3; *Firemen's Ins.*, 2012 WL 1094807, at *4-5.

A court must consider the entirety of a contract in ascertaining the parties' mutual intentions. *See* Restatement (Second) of Contracts § 202(2). In this regard, "an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." *Friedlander v. Veneman*, No. 3:CV-04-1649, 2007 WL 1120528, at *8 (M.D. Pa. Apr. 13, 2007); citing Restatement (Second) of Contracts § 203(a). "[I]n order to ascertain [the parties' mutual] intention, endorsements in a policy must be read in conjunction with the policy as a whole." *Lumbermens Mut. Cas. Co. v. Sutch*, 197 F.2d 79, 82 (3d Cir. 1952); *see also Kehoe v. Auto. Underwriters, Inc.,* 12 F. Supp. 14, 16 (M.D. Pa. 1935); *Knickerbocker Tr. Co. v. Ryan,* 74 A. 1073, 1073 (Pa. 1910). The contractual provision in dispute contains a clause permitting either party to demand arbitration over issues that arise regarding entitlement to damages or the amount of damages. (Doc. 2-1, at 42). The arbitration clause found in Part C of the policy states, in relevant part:

> A. If we and an "insured" do not agree:
>
> 1. Whether that person is legally entitled to recover damages under this Part; or
>
> 2. As to the amount of damages;
>
> either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

(Doc. 2-1, at 41).

In their Complaint, Plaintiffs have made a claim under the UIM coverage portion of the policy. (Doc. 2-1, at 12). Plaintiffs' claims are governed by the endorsement which provides for UIM coverage, which falls under Part C of the policy covering both Uninsured

Motorists ("UM") and UIMs. (Doc. 2-1, at 28-29, 57). Since Part C applies to UIM coverage, the arbitration clause found in Part C of the policy would generally apply to Plaintiffs' UIM claims. (Doc. 2-1, at 41).

However, two relevant endorsements also govern the Court's interpretation of the arbitration clause. First, the endorsement governing UM coverage replaces "Part C – Uninsured Motorists Coverage . . . in its entirety." (Doc. 2-1, at 53). Because the language found in the UM endorsement "replaced [Part C] in its entirety" the Court must examine any arbitration provision, or lack thereof, found in the UM endorsement and not Part C of the policy. *See Nationwide Mut. Ins. Co. v. Consenza*, 258 F.3d 197, 203 n.2 (3d Cir. 2001) (examining the language in an endorsement where the endorsement explicitly replaced the portion of the original policy that included an arbitration provision).

Looking at the plain language of the endorsement, it is clear that the UM Endorsement was intended to replace Part C – UM Coverage "in its entirety." (Doc. 2-1, at 53); *see also Meyer*, 648 F.3d at 163-64. No arbitration provision was included in the endorsement. (Doc. 2-1, at 53-55). Because the UM endorsement has replaced Part C of the policy, and no arbitration clause is included in the endorsement, no arbitration clause is included in the policy. (Doc. 2-1, at 41-42, 53-55); *see also Consenza*, 259 F.3d at 203. Although the UIM endorsement applies "the provisions of the policy . . . unless modified by the endorsement," Part C of the policy has been replaced "in its entirety" by the UM endorsement. (Doc. 2-1, at 53, 57). Therefore, the provisions of the policy no longer include the arbitration clause because the portion that included the arbitration clause was replaced by the UM endorsement which does not include an arbitration clause. (Doc. 2-1, at 41-42, 53-55). Additionally, the UIM endorsement does not include an arbitration provision. (Doc. 2-1, at 57-59). As a result, no

arbitration clause exists in the policy in its current form considering the customizations of the endorsements. (Doc. 2-1, at 53-55, 57-59). As the arbitration clause no longer applies to the policy, the Court cannot compel arbitration as to Plaintiffs' underinsured motorists claim. *See Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999) ("Arbitration is strictly a matter of contract. If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so."); *see also United Steelworkers of Am., v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 582 (1960); *CTF Hotel Holdings, Inc. v. Marriott Intern., Inc.,* 381 F.3d 131, 137 (3d Cir. 2004).

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Compel Arbitration (Doc. 32) is **DENIED**.

An appropriate Order will follow.

**Dated: June 28, 2021**    *s/ Karoline Mehalchick*
                                              **KAROLINE MEHALCHICK**
                                              **Chief United States Magistrate Judge**