UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENISE M. ONDERKO, et. al., <br><br> Plaintiffs, <br><br> v. <br><br> LM GENERAL INSURANCE COMPANY, <br><br> Defendant. | CIVIL ACTION NO. 3:19-CV-02225 <br><br> (MEHALCHICK, M.J.) |

**MEMORANDUM**

Before the Court are two Motions *in limine* (the "Motions") filed by Defendant LM General Insurance Company ("Defendant") in anticipation of trial. (Doc. 44; Doc. 46). Defendant's first Motion *in limine* seeks prelusion of "comment, testimony, and/or argument to the jury about Underinsured Motorist ("UIM") policy limits, premiums paid, amount of Plaintiffs' settlement with tortfeasor, or tortfeasor's liability limits." (Doc. 44, at 1). Defendant's second Motion *in limine* seeks to preclude "Plaintiffs' expert, Anthony Bruno M.D., from testifying as to cost of future treatment." (Doc. 46, at 1). Defendant avers that the introduction of the UIM limits would confuse the jury and prejudice Defendant and that the expert testimony is unreliable. (Doc. 45, at 3; Doc. 47, at 4). Plaintiffs Denise Onderko ("D. Onderko") and Joseph Onderko ("J. Onderko") (hereinafter, collectively known as "Plaintiffs") argue that the UIM limits are relevant due to the nature of the breach of contract claim and that the expert testimony is reliable because it is supported by a sufficient factual foundation. (Doc. 49, at 5; Doc. 48, at 9). Additionally, Plaintiffs note that the expert testimony is not required because they are producing past medical costs to guide the jury in

reference to future medical expenses. (Doc. 48, at 10). The Motions have been fully briefed and are ripe for disposition. (Doc. 44; Doc. 45; Doc. 49; Doc. 46; Doc. 47; Doc. 48).

For the following reasons, Defendant's Motions *in limine* will be **GRANTED**. (Doc. 44; Doc. 46).

### I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs initiated this action with the filing of a Complaint in the Court of Common Pleas of Luzerne County on November 21, 2019, against Defendant. (Doc. 2-1, at 2). Defendant filed a notice of removal on December 30, 2019, removing the action to the United States District Court for the Middle District of Pennsylvania. (Doc. 1). On January 3, 2020, Defendant filed a Motion to Dismiss in which it sought to dismiss Count II of Plaintiffs' Complaint regarding Statutory and Common Law Bad Faith. (Doc. 6). On February 19, 2020, the parties stipulated to the dismissal of Count II and the Court approved the stipulation on February 21, 2020, terminating Defendant's Motion to Dismiss.[1] (Doc. 15; Doc. 17). On January 12, 2021, Plaintiffs filed a Motion to Compel Arbitration, which the Court denied on June 28, 2021. (Doc. 32; Doc. 40).

The sole remaining issue in this action is a breach of contract claim regarding a UIM claim under the insurance policy agreed upon by Plaintiffs and Defendant. (Doc. 2-1, at 17). Plaintiffs' Complaint stems from a vehicular accident that occurred on February 23, 2017, where another driver struck D. Onderko's vehicle and caused a violent collision. (Doc. 2-1, at 7). Plaintiffs allege that the other driver "had a stop sign[,] . . . failed to yield the right of way to Plaintiff, Denise M. Onderko[,] . . . and obstructed the lawful path of travel of Plaintiff,

---

[1] Additionally, on February 19, 2020, the parties consented to proceed before a US Magistrate Judge. (Doc. 16).

Denies M. Onderko." (Doc. 2-1, at 7). Plaintiffs state that D. Onderko suffers from "severe, permanent, painful, and disabling injuries" as well as a loss of earnings and enjoyments. (Doc. 2-1, at 9, 11). Plaintiffs argue that the other driver "has been insufficient to compensate Plaintiffs . . . [and] was operating an underinsured motor vehicle." (Doc. 2-1, at 12). At the time of the collision, Plaintiffs state that they "were named insureds under an automobile Policy issued by Defendant" pertaining, in part, to underinsured motorist coverage. (Doc. 2-1, at 12). Plaintiffs assert that Defendant valued Plaintiffs' liability claims as falling "within the tortfeasors' liability limit of $250,000" and that Defendant has not provided any underinsured motorists benefits under Plaintiffs' policy. (Doc. 2-1, at 16). Plaintiffs contend that Defendant failed to adequately evaluate Plaintiffs' UIM claim, failed to offer reasonable payment for the claim, and failed to adequately investigate the claim in violation of its "fiduciary, contractual, and statutory" duty resulting in a breach of the agreed upon policy. (Doc. 2-1, at 17-18).

Defendant filed the Motions on August 30, 2021, along with briefs in support. (Doc. 44; Doc. 45; Doc. 46; Doc. 47). Plaintiffs filed their briefs in opposition on September 13, 2021. (Doc. 48; Doc. 49). On September 20, 2021, a Final Pretrial Conference was held where the parties presented oral argument on the Motions. The Court has scheduled a jury trial in this matter to being on Monday, October 25, 2021, at 9:30 AM in Scranton, Pennsylvania. (Doc. 43, at 1).

II.  **STANDARD OF REVIEW**

The court is vested with broad inherent authority to manage its cases, which carries with it the discretion to rule on motions *in limine* prior to trial. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir.

1983), *rev'd on other grounds sub nom.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (noting that the court exercises its discretion to rule *in limine* on evidentiary issues "in appropriate cases"). Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing, or irrelevant evidence. *United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988). Courts may also do so in order to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted). In considering motions *in limine*, which call upon the court to engage in preliminary evidentiary rulings under Rule 403 of the Federal Rules of Evidence, the Court begins by recognizing that these "evidentiary rulings [on motions *in limine*] are subject to the trial judge's discretion and are therefore reviewed only for abuse of discretion . . . . Additionally, application of the balancing test under Federal Rule of Evidence 403 will not be disturbed unless it is 'arbitrary and irrational.'" *Ely v. Cabot Oil & Gas Corp.*, No. 3:09-CV-2284, 2016 WL 454817, at *2 (M.D. Pa. Feb. 5, 2016) (citing *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1213 (3d Cir. 1995) (citations omitted)); *see Bernardsville Bd. of Educ. v. J.H.*, 42 F.3d 149, 161 (3d Cir. 1994) (reviewing *in limine* rulings for abuse of discretion).

The Federal Rules of Evidence can be characterized as evidentiary rules of inclusion, which are designed to broadly permit fact-finders to consider pertinent factual information while searching for the truth. *Ely*, 2016 WL 454817, at *3. The grounds for exclusion of evidence are described as an exception to the general rule favoring admission of relevant evidence, and by permitting the exclusion of relevant evidence only when its probative value is "substantially outweighed" by other prejudicial factors, the Court's discretion in considering evidentiary rulings should consistently be exercised in a fashion which resolves

all doubts in favor of the admission of relevant proof in a proceeding. Only where the relevance of that proof is substantially outweighed by some other factors, should admission be denied. *Ely*, 2016 WL 454817, at *3. Evidence is "relevant" if its existence simply has "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401(a)-(b).

However, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. The balancing test under Rule 403 provides as follows:

> [t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.
>
> Fed. R. Evid. 403.

In general, the Federal Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact. Fed. R. Evid. 402.

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires an expert witness to have "specialized knowledge" regarding the area of testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge [, i.e., reliability]; and (3) the expert's testimony must assist the trier of fact [, i.e., fit]." *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010) (alterations in original) (quoting *Pineda v. Ford Motor Co.,* 520 F.3d 237, 244 (3d Cir. 2008)).

First, an expert is qualified if "the witness possess[es] specialized expertise." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The United States Court of Appeals for the Third Circuit interprets the qualifications requirement liberally, and notes that "a broad range of knowledge, skills, and training qualify an expert as such." *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 741 (3d Cir. 1994); *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 327-28 (3d Cir. 2002) ("[T]his specialized knowledge can be practical experience as well as academic training and credentials...."). Thus, "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Holbrook v. Lykes Bros. S.S. Co.,* 80 F.3d 777, 782 (3d Cir. 1996); *see Pineda*, 520 F.3d at 244, & n.11 (collecting cases that illustrate the permissive nature of qualifications requirement). "However, at a minimum, a proffered expert witness must possess skill or knowledge greater than the average layman." *Betterbox*, 300 F.3d at 328 (quotation omitted).

The second requirement under Rule 702 is that "the process or technique the expert used in formulating the opinion is reliable." *Paoli*, 35 F.3d at 742. Therefore, "the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective

belief or unsupported speculation;' the expert must have 'good grounds' for his or her belief." *Paoli*, 35 F.3d at 742 (quoting *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 590 (1993)). The court in Daubert noted that the assessment of whether testimony is based on a reliable foundation is "flexible." *Daubert*, 509 U.S. at 594.

The third and last requirement under Rule 702 is "that the expert testimony must fit the issues in the case." *Schneider*, 320 F.3d at 404. This requirement is satisfied where the "expert testimony proffered ... is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985). "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert,* 509 U.S. at 591-92. Although the applicable standard for determining "fit" is "not that high," it is nonetheless "higher than bare relevance." *Paoli*, 35 F.3d at 745.

As a final note, in performing its gatekeeping function to determine whether an expert's proffered testimony is reliable and relevant under *Daubert* and Rule 702, the trial court "is not to weigh the evidence relied upon or determine whether it agrees with the conclusions reached therein." *Walker v. Gordon*, 46 F. App'x 691, 695 (3d Cir. 2002) (not precedential) (citing *Breidor v. Sears, Roebuck & Co.*, 722 F.2d 1134, 1138-39 (3d Cir. 1983) ("Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge.")).

In keeping with this framework, the Court turns to each of the Motions *in limine* filed by Defendant. (Doc. 44; Doc. 46).

**III. DISCUSSION**

    A. MOTION *IN LIMINE* TO PRECLUDE COMMENT, EVIDENCE, TESTIMONY, AND/OR ARGUMENT TO THE JURY ABOUT UIM POLICY LIMITS, PREMIUMS PAID, AMOUNT OF PLAINTIFFS' SETTLEMENT WITH TORTFEASOR, OR TORTFEASOR'S LIABILITY LIMITS

Defendant seeks to "preclude comment evidence, testimony, and/or arguments to the jury about UIM policy limits, premiums paid, amount of Plaintiffs' settlement with Tortfeasor, or Tortfeasor's liability limits." (Doc. 45, at 1). Defendant argues that such evidence is irrelevant because, although the sole remaining claim in this action is for a breach of contract, the evidence in question is not at issue for the jury to decide. (Doc. 45, at 4) Additionally, Defendant contends that the information would unfairly prejudice the jury as the monetary evidence would "suggest a number to the jury, or offer the jury a range or cap, as it were, around which they might craft their award." (Doc. 45, at 5) (internal quotations omitted). Plaintiffs argue that the evidence is relevant because the claim that will be presented to the jury is a breach of contract claim against Defendant and the essential terms of the contract are "relevant and appropriate" because the contract is at the core of the breach of contract claim. (Doc. 49, at 8).

The district courts of Pennsylvania have arrived upon different conclusions when assessing the relevance of UIM limits in breach of contract cases. *See Stewart v. Geico*, No. 2:18-CV-00791-MJH, 2020 WL 6020578, at *1 (W.D. Pa. Oct. 11, 2020) (summarizing the split in district court opinions in Pennsylvania). Some courts have determined that such evidence is relevant in assisting the jury to understand the case because the information provides a complete picture of the contract at issue, "even if it is merely background information." *Noone v. Progressive Direct Ins. Co.,* No. 3:12cv1675, 2013 WL 8367579, at *2

(M.D. Pa. May 28, 2013). Other courts have found that this type of evidence is irrelevant because the policy limits and paid premiums are not at issue for the jury to decide and the evidence is prejudicial because it gives "the jury an anchor number that has no bearing on [the plaintiffs'] damages." *Lucca v. Geico Ins. Co.*, No. 15-4124, 2016 WL 3632717, at *3 (E.D. Pa. July 7, 2016).

In *Noone*, the United States District Court for the Middle District of Pennsylvania held that evidence of the "amounts of premiums that plaintiff paid on the policy and the limits of the underinsured motorist coverage available under the policy, . . . the amount of liability insurance coverage available to the tortfeasor and/or the amount of liability insurance coverage recovered by plaintiff from the tortfeasor" was relevant due to the nature of the claim. *Noone*, 2013 WL 8367579, at *1-2. The court reasoned that the evidence was important to the jury to understand "the alleged breach of an insurance policy with regard to providing underinsured motorist benefits." *Noone,* 2013 WL 8367579, at *2. The court also explained that the evidence was "not overly prejudicial . . . [and] even if it is merely background information, [it would] assist the jury in completely understanding and evaluating the case." *Noone*, 2013 WL 8367579, at *2.

In contrast, the United States District Court for the Eastern District of Pennsylvania held that "testimony or other evidence relating to the underinsured motorist policy limits and the amount of premiums paid" was irrelevant to a breach of contract claim because the facts were "undisputed and therefore not for the jury to decide." *Lucca*, 2016 WL 3632717, at *1, *3. In *Lucca*, the court stressed that because the sole remaining claim in the case was the breach of contract claim and the policy limits and paid premiums were undisputed "[t]he only issue for the jury to decide [was] the extent of [the plaintiff's] injuries from the accident."

*Lucca*, 2016 WL 3632717, at *3. Such facts "[did] not have 'any tendency to make [any facts at issue in the case] more or less probable than it would [have been] without the evidence.'" *Lucca*, 2016 WL 3632717, at *3 (quoting Fed. R. Civ. Evid. 401). The *Lucca* court noted that the *Noone* court did not explain "how th[e] background information would be helpful to the jury or to what disputed issue in the case the information related." *Lucca*, 2016 WL 3632717, at *2. Additionally, the *Lucca* court explained that such evidence might prejudice the insurance provider because it could give "the jury an anchor number that has no bearing on [the plaintiff's] damages." *Lucca*, 2016 WL 3632717, at *3. The court ultimately granted the insurance providers motion *in limine* and excluded "any mention of the policy limits or the amount of premiums paid" from being presented at trial. *Lucca*, 2016 WL 3632717, at *3. The court noted that that "[o]nce a verdict has been rendered . . . the Court can mold the verdict appropriately to reflect the limits of both [the plaintiff's] policy and the third party tortfeasor's policy." *Lucca*, 2016 WL 3632717, at *3; *see also Stewart*, 2020 WL 6020578, at *1; *Schmerling v. LM Gen. Ins. Co., Inc.*, No. 17-3659, 2018 WL 5848981, at *2 (E.D. Pa. Nov. 8, 2018). *Ridolfi v. St. Farm Mut. Auto. Ins. Co.*, No. 1:15-CV-859, 2017 WL 3198062, at *3 (M.D. Pa. July 27, 2017).

Here, the policy itself is not at issue nor are the contractual terms or limitations. (Doc. 52, at 11-14). As the courts did in *Stewart* and *Lucca*, the Court finds that such contractual issues and settlement topics are not relevant because they are not disputed in this case. (Doc. 52, at 11-14); *see Stewart*, 2020 WL 6020578, at *1; *Lucca*, 2016 WL 3632717, at *3. Here, the main question the jury is tasked with deciding is "the extent of [the plaintiff's damages] from the accident." *See Luca*, 2016 WL 3632717, at *3. Although the testimony and evidence could give context to aid the jury in its decision, the prejudicial nature of an "anchor number"

- 10 -

outweighs the relevance of the evidence. *See Stewart,* 2020 WL 6020578, at *1; *Lucca,* 2016 WL 3632717, at *3. Thus, any information regarding the policy limits, premiums paid, tortfeasor settlement, and tortfeasor liability limits would be unfairly prejudicial to the Defendant. *See Stewart,* 2020 WL 6020578, at *1; *Lucca,* 2016 WL 3632717, at *3. As such, Defendant's request to preclude "comment evidence, testimony, and/or arguments to the jury about UIM policy limits, premiums paid, amount of Plaintiffs' settlement with Tortfeasor, or Tortfeasor's liability limits" is **GRANTED**. (Doc. 44).

### B. Motion *in Limine* to Preclude Plaintiffs' Expert, Anthony Bruno, M.D., from Testifying as to Cost of Future Treatment

Defendant wishes to preclude "Plaintiffs' Expert, Anthony Bruno, M.D., from testifying as to cost of future treatment." (Doc. 47, at 1). Defendant contends that the Expert's opinion as to the cost of D. Onderko's future medical treatment is unreliable due to its broad range of "thousands of dollars to hundreds of thousands of dollars" and the Expert's "fail[ure] to apply professional principals and methods ordinarily used when estimating future medical costs." (Doc. 47, at 4). Plaintiffs argue that the "expert report is well supported by facts and data and is the product of a reliable methodology." (Doc. 48, at 6). Additionally, Plaintiffs draw attention to an alternative way to produce evidence of future medical care when evidence of past medical bills are introduced to the jury to "help guide [them] in assessing an award for future medical expenses." (Doc. 48, at 11).

To present damages for future medical expenses, "a plaintiff must provide expert medical evidence by which [he or she] could convince a jury that the amount of future medical expenses claimed is reasonable, and . . . such testimony cannot be merely speculative." *See Feranti v. Martin,* No. 3:06cv1694, 2008 WL 111272, at *3 (M.D. Pa. Jan. 8, 2008) (citing

*Cohen v. Albert Einstein Med. Ctr.,* 592 A.2d 720, 729 (Pa. Super. Ct. 1991)); *see also Mendralla v. Weaver Corp.*, 703 A.2d 480, 485 (Pa. Super. Ct. 1997). The jurors must be presented with "a reasonable amount of information sufficient to enable them to estimate damages without engaging in speculation." *See Cohen*, 592 A.2d, at 729. However, "if [there is] a reasonable basis for the jury to conclude that the medical care rendered in the past is the same as the medical care that will be required in the future, the plaintiff can introduce past medical bills in lieu of expert testimony about future medical costs." *See Keifer v. Reinhart Foodservices, LLC,* 563 F. App'x 112, 117 (3d Cir. 2014) (citing *Rogers v. Phila. & Reading Ry. Co.*, 106 A. 734, 736 (Pa. 1919) ("Where the evidence in a personal injury action shows the value of medical services already rendered [by] the injured person, and that such service will be required in the future, the jury may determine from the past service, and its value, what may reasonably be required in the future, although there is no other evidence of the value of the future services." (internal citations omitted)); *see also Good v. FirstEnergy Corp.*, No. 3:13cv149, 2016 WL 492804, at *6, n. 6 (M.D. Pa. Feb. 9, 2016).

Here, Plaintiffs have demonstrated their "intent[ion] to introduce into evidence the past medical bills incurred by Mrs. Onderko." (Doc. 48, at 11). D. Onderko's medical bills include charges for "prior scar revision surgeries . . . and . . . other conservative treatment modalities for the scar." (Doc. 48, at 11). The Expert contends that some of D. Onderko's future treatment could include procedures similar to those she has had in the past, including scar revisions and topical treatments. (Doc. 48, at 7). The expert testimony could provide a "reasonable basis for the jury to conclude that the medical care rendered in the past is the same as the medical care that will be rendered in the future." *See Keifer*, 563 F. App'x at 117. Because Plaintiffs intend to introduce past medical evidence that is similar to treatments that

could occur in the future, the damages for future medical treatments would not be "merely speculative." See Feranti, 2008 WL 111272, at *3. This method of producing evidence of future medical expenses would eliminate the need for expert testimony regarding the estimated cost of future treatment and any concerns of reliability as to the expert testimony. See Keifer, 563 F. App'x at 117. Thus, Plaintiffs can proffer evidence of future medical expenses through the presentation of past medical bills and testimony regarding similar future treatment and are precluded from providing testimony regarding future costs by the Expert at this time. See Pratt v. Stein, 444 A.2d 674, 698 (Pa. Super. Ct. 1982). In so much as Plaintiffs' redacted addendum provides evidence of future medical costs that was not provided previously to Defendant, it may not be admitted at trial. (Doc. 56-1, at 2). Such information would be prejudicial to Defendant as supplemental expert disclosures were due on January 15, 2021, and the redacted addendum was not filed until September 28, 2021, 256 days after the deadline. (Doc. 26, at 2; Doc. 56-1); see Vaskas v. Kenworth, No. 3:10-CV-1024, 2013 WL 1207963, at *2-3 (M.D. Pa. Mar. 25, 2013) (striking expert reports that were filed 100 days past the deadline for supplemental expert disclosures). However, if it appears that the jury must engage in speculation due to the lack of relation between the past and possible future care, the parties may revisit this issue at trial. Therefore, Defendant's request to preclude Plaintiffs' Expert, Anthony Bruno, M.D., from testifying as to cost of future treatment is **GRANTED**, without prejudice to revisiting the issue at trial. (Doc. 46).

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motions *in limine* are **GRANTED**. (Doc. 44; Doc. 46).

An appropriate Order follows.

                                            **BY THE COURT:**

Dated: October 16, 2021                      *s/ Karoline Mehalchick*
                                            **KAROLINE MEHALCHICK**
                                            **Chief United States Magistrate Judge**